| | |
|---|---|
| REYNOLDS INNOVATIONS INC., )<br><br>Plaintiff, )<br><br>vs. )<br><br>THEVAPORPRO, LLC d/b/a/ "THE )<br>VAPORPRO.COM"; ARTHUR C. )<br>PEFFER, JR., individually and d/b/a )<br>"THEVAPORPRO, LLC" and )<br>"THEVAPORPRO.COM"; NANCY J. )<br>PEFFER, individually and d/b/a )<br>"THEVAPORPRO, LLC" and )<br>"THEVAPORPRO.COM"; and )<br>AMBER C. PEFFER, individually and )<br>d/b/a "THEVAPORPRO, LLC" and )<br>"THEVAPORPRO.COM", )<br><br> )<br> )<br>Defendants. )<br>_____ ) | Civil Action No. 1:13-cv-1009 |

## COMPLAINT

Plaintiff, Reynolds Innovations Inc. ("RII") states the following for its Complaint

against Defendants (i) TheVaporPro, LLC d/b/a "TheVaporPro.com"; (ii) Arthur C.

Peffer, Jr., individually and d/b/a "TheVaporPro, LLC" and "TheVaporPro.com"; (iii)

Nancy J. Peffer, individually and d/b/a "TheVaporPro, LLC" and "TheVaporPro.com";

and (iv) Amber C. Peffer, individually and d/b/a "TheVaporPro, LLC" and

"TheVaporPro.com" (collectively, "Defendants"):

## NATURE OF THE ACTION

1.      This is an action at law and in equity for trademark infringement, unfair

1

competition and false designation of origin, and trademark dilution arising under Sections 2, 32, 37 and 43 of the Federal Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1051 *et seq.*; trademark infringement and unfair competition arising under the common law of the State of North Carolina; and unfair or deceptive trade practices arising under N.C. Gen. Stat. §§ 75-1 *et seq.*

2.    As more fully described below, without RII's authorization, Defendants have used and continue to use trademarks that are colorable imitations of, and are confusingly similar to, RII's federally-registered trademarks in the United States in connection with the sale of Defendants' liquid nicotine products via the Internet.  In particular, Defendants have used, without RII's authorization, colorable imitations of the famous CAMEL and CAMEL & Design trademarks and variations thereof (collectively, the "CAMEL Marks"), the famous WINSTON and WINSTON & Design trademarks and variations thereof (collectively, the "WINSTON Marks"), and the famous KOOL trademarks and variations thereof (collectively, the "KOOL Marks").  Examples of Defendants' infringing uses are shown immediately below.

  

3.    On information and belief, Defendants have been and continue to be engaged in the business of operating the Internet website at <www.thevaporpro.com>

("Defendants' Website"), through which Defendants actively promote and sell flavored liquid nicotine products known as "Wicked Vapor®" for use with electronic cigarettes. On further information and belief, without RII's authorization, Defendants have used RII's famous and federally-registered CAMEL Marks, WINSTON Marks and KOOL Marks, or colorable imitations thereof, in the advertising and sale of its liquid nicotine products.

4.    On information and belief, without RII's authorization, Defendants have sold and shipped, and continue to sell and ship, varieties of liquid nicotine products bearing trademarks that are confusingly similar to, and colorable imitations of, RII's federally-registered and famous CAMEL Marks, WINSTON Marks and KOOL Marks to customers in the United States and in this District.

5.    RII has not authorized or permitted Defendants to use its CAMEL Marks, WINSTON Marks and KOOL Marks, or colorable imitations of any of the marks owned by RII, in connection with Defendants' liquid nicotine products.  Unless enjoined by this Court, Defendants' conduct will continue to result in a likelihood of consumer confusion and irreparable injury to RII.

## PARTIES, JURISDICTION, AND VENUE

6.    RII is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at 401 North Main Street, Winston-Salem, North Carolina.  RII is a trademark holding company and a subsidiary of R.J. Reynolds Tobacco Company.  RII is therefore the record owner, in its own right or by assignment from its predecessors-in-interest, of the CAMEL Marks, WINSTON Marks

3

and KOOL Marks that are at issue in this dispute, including the federal trademark registrations that are identified below. For convenience, and unless the context indicates otherwise, the term "Reynolds" will be used to refer collectively to RII, RII's predecessors-in-interest and/or RII's corporate affiliates who use the trademarks owned by RII under authority from RII.

7. On information and belief, Defendant TheVaporPro, LLC (the "Defendant Company") is a limited liability company organized under the laws of Florida, with an address at 6574 N. State Road 7 #231, Coconut Creek, Florida, 33073. On further information and belief, the Defendant Company conducts business via Defendants' Website.

8. On information and belief, Arthur C. Peffer, Jr., is a resident of Florida with an address at 4913 NW 50th Court, Coconut Creek, Florida, 33073. On further information and belief, Arthur Peffer is member and manager of the Defendant Company and directs and controls the business activities of the Defendant Company, including the operation of Defendants' Website.

9. On information and belief, Defendant Nancy J. Peffer is a resident of Florida with an address at 4913 NW 50th Court, Coconut Creek, Florida, 33073. On further information and belief, Nancy Peffer is member and manager of the Defendant Company and directs and controls the business activities of the Defendant Company, including the operation of Defendants' Website.

10. On information and belief, Defendant Amber C. Peffer is a resident of Florida with an address at 4913 NW 50th Court, Coconut Creek, Florida, 33073. On

4

further information and belief, Amber Peffer is member and manager of the Defendant Company and directs and controls the business activities of the Defendant Company, including the operation of Defendants' Website.

11.     This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338.  As to the state law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of doing business in this district. Defendants own and operate Defendants' Website, which is an interactive website that is accessible by Internet users in this District and offer goods to residents of North Carolina. The infringing products that Defendants advertise and offer under the CAMEL Marks, WINSTON Marks and KOOL Marks, or colorable imitations thereof, and make available through Defendants' Website to purchasers in the United States, are capable of being ordered, and have been ordered, by purchasers in North Carolina, and are capable of being shipped, and have been shipped, to purchasers in North Carolina.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

14.     This Court has jurisdiction to enter injunctive relief, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

15.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

16.     At all times material hereto, Reynolds has been, and currently is still, engaged in the business of manufacturing, distributing, marketing, advertising, offering for sale, and selling various types of tobacco products throughout the United States under multiple trademarks owned by RII and under authority from RII.  As more fully described below, RII's famous CAMEL Marks, WINSTON Marks and KOOL Marks are registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") and are used in connection with the sale of cigarettes, among other things. RII sells products under the CAMEL Marks, WINSTON Marks and KOOL Marks across the United States.  RII's CAMEL Marks, WINSTON Marks and KOOL Marks are famous throughout the United States.

17.     In addition to its traditional tobacco products, Reynolds has recently begun offering for sale in the marketplace, under the brand name VUSE, electronic cigarette products, components and accessories.

### CAMEL Marks

1.     Beginning at least as early as 1913, Reynolds adopted and began using the distinctive designation CAMEL in interstate commerce for the purpose of identifying and distinguishing Reynolds's tobacco products from the products of other manufacturers and distributors of tobacco.  Reynolds has advertised, marketed, distributed, offered for sale, and sold its products under the CAMEL Marks continuously for 100 years.

6

2.     On September 30, 1919, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 126,760 for the trademark CAMEL (stylized, as shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'760 Registration").

# CAMEL

The '760 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '760 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '760 Registration, together with USPTO assignment records reflecting RII's ownership of the '760 Registration, is attached hereto as <u>Exhibit 1</u>.

3.     On January 13, 1976, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,030,232 for the Camel Design trademark (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'232 Registration").



7

The '232 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '232 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '232 Registration, together with USPTO assignment records reflecting RII's ownership of the '232 Registration, is attached hereto as Exhibit 2.

4.     On April 29, 1986, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,391,824 for the trademark CAMEL & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'824 Registration").



The '824 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '824 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate

8

of Registration for the '824 Registration, together with USPTO assignment records reflecting RII's ownership of the '824 Registration, is attached hereto as <u>Exhibit 3</u>.

5. On February 20, 2007, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,211,464 for the trademark CAMEL, in standard characters, on the USPTO's Principal Register for use in connection with "snuff, namely snus" (the "'464 Registration"). The '464 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '464 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "snuff, namely snus." A true and accurate copy of the Certificate of Registration for the '464 Registration, together with USPTO assignment records reflecting RII's ownership of the '464 Registration, is attached hereto as <u>Exhibit 4</u>.

6. On March 31, 2009, RII was granted U.S. Trademark Registration No. 3,599,620 for the Camel Design trademark (shown below) on the USPTO's Principal Register for use in connection with "smokeless tobacco" (the "'620 Registration").



A true and accurate copy of the Certificate of Registration for the '620 Registration,

together with USPTO assignment records reflecting RII's ownership of the '620

Registration, is attached hereto as Exhibit 5. (The '760, '232, '824, '464, and '620

Registrations are referred to collectively hereinafter as the "CAMEL Registrations," and

the trademarks shown therein, and the common law equivalents of such trademarks, are

hereinafter referred to as the "CAMEL Marks.")

7.      RII owns, *inter alia*, the CAMEL Registrations, the CAMEL Marks, and all

the goodwill associated therewith in the United States. The CAMEL Registrations

remain valid, subsisting, and uncancelled, and the '760, '232, '824, and '464

Registrations have become incontestable as described above.

8.      The CAMEL Marks are famous trademarks that are widely recognized by

the general consuming public across the United States as a designation of the source of

Reynolds's goods.

9.      The CAMEL Marks inherently serve to distinguish Reynolds's tobacco

products from those of others. The CAMEL Marks are recognized by the general

consuming public as a designation of the source of Reynolds's products and, as a result of

Reynolds's long and continuous use and promotion of the CAMEL Marks throughout the

United States, consumers of tobacco products recognize the CAMEL Marks as symbols

of the highest quality of tobacco products, and associate and identify the CAMEL Marks

with Reynolds or with a single source. Reynolds derives substantial goodwill and value

from this identification by the consuming public and the trade.

<u>WINSTON Marks</u>

10.    Beginning at least as early as 1952, Reynolds adopted and began using the distinctive designation WINSTON in interstate commerce for the purpose of identifying and distinguishing Reynolds's tobacco products from the products of other manufacturers and distributors of tobacco.  Reynolds has advertised, marketed, distributed, offered for sale, and sold its products under the WINSTON mark continuously for sixty (60) years.

11.    On October 30, 1956, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 636,355 for the trademark WINSTON on the USPTO's Principal Register for use in connection with "cigarettes" (the "'355 Registration").  The '355 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '355 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '355 Registration, together with USPTO assignment records reflecting RII's ownership of the '355 Registration, is attached hereto as <u>Exhibit 6</u>.

12.    Reynolds has also used the WINSTON mark in conjunction with designs and other terms.  On January 13, 1976, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,030,233 for the trademark WINSTON & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the

"'233 Registration"). Reynolds has used this WINSTON & Design mark in interstate commerce in connection with cigarettes since at least March 22, 1954.



The '233 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '233 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '233 Registration, together with USPTO assignment records reflecting RII's ownership of the '233 Registration, is attached hereto as Exhibit 7.

13.    On March 21, 2000, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 2,330,639 for the trademark WINSTON & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'639 Registration").



12

The '639 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '639 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '639 Registration, together with USPTO assignment records reflecting RII's ownership of the '639 Registration, is attached hereto as <u>Exhibit 8</u>. (The '355, '233, and '639 Registrations are referred to collectively hereinafter as the "WINSTON Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "WINSTON Marks.")

14.     RII owns, *inter alia*, the WINSTON Registrations, the WINSTON Marks, and all the goodwill associated therewith in the United States. The WINSTON Registrations remain valid, subsisting, and uncancelled, and have become incontestable as described above.

15.     The WINSTON Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

16.     The WINSTON Marks inherently serve to distinguish Reynolds's tobacco products from those of others. The WINSTON Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the WINSTON Marks throughout

the United States, consumers of tobacco products recognize the WINSTON Marks as symbols of the highest quality of tobacco products, and associate and identify the WINSTON Marks with Reynolds or with a single source. Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

<u>KOOL Marks</u>

17. Beginning at least as early as 1931, Reynolds's predecessor-in-interest adopted and began using the distinctive designation KOOL in interstate commerce for the purpose of identifying and distinguishing its tobacco products from the products of other manufacturers and distributors of tobacco. Reynolds or its predecessors-in-interest has advertised, marketed, distributed, offered for sale, and sold its products under the KOOL mark continuously for more than eighty (80) years.

18. On April 12, 1949, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 508,538 for the trademark KOOL (stylized, as shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'538 Registration"). Reynolds has used this KOOL & Design trademark in interstate commerce in connection with cigarettes since at least November 20, 1931.



The '538 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '538 Registration therefore constitutes

conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '538 Registration, together with USPTO assignment records reflecting RII's ownership of the '538 Registration, is attached hereto as <u>Exhibit 9</u>.

19. On April 2, 1963, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 747,482 for the trademark KOOL on the USPTO's Principal Register for use in connection with "cigarettes" (the "'482 Registration"). Reynolds has used this KOOL mark in interstate commerce in connection with cigarettes since at least November 20, 1931. The '482 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '482 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '482 Registration, together with USPTO assignment records reflecting RII's ownership of the '482 Registration, is attached hereto as <u>Exhibit 10</u>.

20. On April 2, 1963, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 747,490 for the trademark KOOL & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'490

Registration"). Reynolds has used this KOOL & Design mark in interstate commerce in connection with cigarettes since at least December 1932.



The '490 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '490 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '490 Registration, together with USPTO assignment records reflecting RII's ownership of the '490 Registration, is attached hereto as Exhibit 11.

21.     On October 27, 1998, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 2,218,589 for the trademark KOOL in stylized form (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'589 Registration").



16

The '589 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '589 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '589 Registration, together with USPTO assignment records reflecting RII's ownership of the '589 Registration, is attached hereto as Exhibit 12. (The '538, '482, '490, and '589 Registrations are referred to collectively hereinafter as the "KOOL Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "KOOL Marks.")

22.     RII owns, *inter alia*, the KOOL Registrations, the KOOL Marks, and all the goodwill associated therewith in the United States. The KOOL Registrations remain valid, subsisting, and uncancelled, and the KOOL Registrations have become incontestable as described above.

23.     The KOOL Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

24.     The KOOL Marks inherently serve to distinguish Reynolds's tobacco products from those of others. The KOOL Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the KOOL Marks throughout the

17

United States, consumers of tobacco products recognize the KOOL Marks as symbols of the highest quality of tobacco products, and associate and identify the KOOL Marks with Reynolds or with a single source. Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

## Defendants' Unlawful Acts

25.     On information and belief, Defendants operate Defendants' Website which advertises, offers for sale, and sells, among other things, flavored liquid nicotine products known as "Wicked Vapor®" for use with electronic cigarettes.

26.     Defendants' Website offers Wicked Vapor liquid nicotine products in various flavors, including a number of flavors categorized as "Tobacco Flavors." Printouts of web pages from Defendants' Website, showing these flavors, are attached hereto as Exhibit 13.

27.     On information and belief, Defendants have advertised, offered for sale, and sold through Defendants' Website various liquid nicotine and electronic cigarette products advertised under and/or bearing the CAMEL Marks, or marks that are confusingly similar to and colorably imitate the CAMEL Marks; the WINSTON Marks, or marks that are confusingly similar to and colorably imitate the WINSTON Marks; and the KOOL Marks, or marks that are confusingly similar to and colorably imitate the KOOL Marks. *See* Exhibit 13. Hereinafter, these liquid nicotine products advertised, offered for sale, and sold by Defendants will be referred to as the "Infringing Products" or, if more specificity is required, the "Infringing CAMEL Products", the "Infringing WINSTON Products" or "Infringing KOOL Products," as the case may be.

18

28.     Among the "Tobacco Flavors" of products advertised and offered on Defendants' Website are liquid nicotine identified with the image of a camel.  *See* <u>Exhibit 13</u>.  Other liquid nicotine products advertised and offered on Defendants' Website are products identified as "W STONIAN" and "COOL."  *See* <u>Exhibit 13</u>.  Examples of Defendants' unauthorized use of RII's CAMEL Marks, WINSTON Marks, and KOOL Marks, or colorable imitations of these above-listed marks, on Defendants' Website are shown below in Figures 1-3, respectively, and in <u>Exhibit 13</u>.


Fig. 1: (Infringing CAMEL Products)

< http://www.thevaporpro.com/usa-made-desert-ship-smoke-juice-e-liquid-30ml-bottle.html>:



Fig. 2: (Infringing WINSTON Products)
< http://www.thevaporpro.com/usa-made-w-stonian-smoke-juice-e-liquid-30ml-bottle.html>:



Fig. 3: (Infringing KOOL Products)
< http://www.thevaporpro.com/usa-made-cool-menthol-smoke-juice-e-liquid-30ml-bottle.html>:



29.     That Defendants are using and free-riding on the goodwill and reputation of the famous CAMEL Marks is also evidenced by the fact that Defendants use a depiction of a camel in connection with the flavor identified as "Desert Ship."  *See* Exhibit 13.  The camel depiction used by Defendants is evocative of and similar to the Camel Design trademarks shown in the '232 and '620 Registrations, as well as RII's camel design element shown in the '824 Registration.  *See* Exhibits 2, 3, and 5.

30.     Defendants are also using a red color scheme and banded design that is evocative of and similar to the distinctive WINSTON packaging shown in the '639 and

'233 Registrations.  *See* <u>Exhibits 7</u> and <u>8</u>.

31.     On information and belief, Defendants have sold and continue to sell the Infringing Products through Defendants' Website to purchasers throughout the United States, including North Carolina.

32.     True and correct printouts of photographs of Infringing CAMEL Products, Infringing WINSTON Products and Infringing KOOL Products, as received by a purchaser in North Carolina, are attached hereto as <u>Exhibit 14</u>.

33.     Reynolds did not and does not manufacture, distribute, market, offer for sale, or sell any electronic cigarette or liquid nicotine products under the CAMEL Marks, WINSTON Marks or KOOL Marks.

34.     RII has not authorized, and does not authorize, Defendants' use of the CAMEL Marks, WINSTON Marks or KOOL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the manufacture or sale of Defendants' liquid nicotine products any other products of Defendants.

### FIRST CLAIM FOR RELIEF
**(Infringement of Federally Registered Trademarks
under 15 U.S.C. § 1114)**

35.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

36.     Defendants' unauthorized use of the registered CAMEL Marks and Defendants' sale of Infringing CAMEL Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendants' Infringing CAMEL Products

22

are products authorized by RII for sale under the CAMEL Marks, partaking of the same qualities and characteristics as products bearing the CAMEL Marks, when such is not the case.

37.     By their unauthorized sale of the Infringing CAMEL Products, Defendants have infringed and continue to infringe the registered CAMEL Marks, as shown in the CAMEL Registrations, respectively, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

38.     Defendants' unauthorized use of the registered WINSTON Marks and Defendants' sale of Infringing WINSTON Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products.  The consuming public is likely to believe that Defendants' Infringing WINSTON Products are products authorized by RII for sale under the WINSTON Marks, partaking of the same qualities and characteristics as products bearing the WINSTON Marks, when such is not the case.

39.     By their unauthorized sale of the Infringing WINSTON Products, Defendants have infringed and continue to infringe the registered WINSTON Marks, as shown in the WINSTON Registrations, respectively, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

40.     Defendants' unauthorized use of the registered KOOL Marks and Defendants' sale of Infringing KOOL Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendants' Infringing KOOL Products are

products authorized by RII for sale under the KOOL Marks, partaking of the same qualities and characteristics as products bearing the KOOL Marks, when such is not the case.

41. By their unauthorized sale of the Infringing KOOL Products, Defendants have infringed and continue to infringe the registered KOOL Marks, as shown in the KOOL Registrations, respectively, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

42. Defendants' unauthorized sale of their Infringing CAMEL Products, Infringing WINSTON Products and Infringing KOOL Products and Defendants' unauthorized use of the CAMEL Marks, WINSTON Marks and KOOL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the sale of such products, as alleged above, was intentionally done with a view and purpose of trading on and benefiting from the substantial reputation and goodwill in the United States associated with the CAMEL Marks, WINSTON Marks and KOOL Marks.

43. Defendants' acts of trademark infringement, as alleged herein, have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct. In addition, Defendants have been unjustly enriched by reason of their trademark infringement in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

44. Defendants' trademark infringement as alleged herein has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and

harm to RII's business, reputation, and goodwill, unless Defendants' unlawful conduct is enjoined by this Court.

45. RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their infringing use of the CAMEL Marks, WINSTON Marks and KOOL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the offering for sale and sale of electronic cigarette and liquid nicotine products or related products, and the costs of this action.

46. Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition, False Representation, and False Designation of Origin under 15 U.S.C. § 1125(a))

47. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

48. Defendants' unauthorized use of the CAMEL Marks, WINSTON Marks and KOOL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the sale of Defendants' Infringing CAMEL Products, Infringing WINSTON Products and Infringing KOOL Products, respectively, constitutes unfair competition, false representation, and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is causing and, unless enjoined by this Court, will continue to cause confusion, to cause mistake, or to deceive purchasers and

25

consumers as to the source, origin, or sponsorship of Defendants' products.

49.     As a direct and proximate result of Defendants' unfair competition, false representation, and false designation of origin as herein alleged, RII has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill.  Defendants' unfair competition, false representation, and false designation of origin has caused and will continue to cause RII to lose sales to which it would otherwise be entitled, unless such unlawful conduct is enjoined by this Court.

50.     RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unauthorized use of the CAMEL Marks, WINSTON Marks and KOOL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the offering for sale and sale of electronic cigarette and liquid nicotine products or related products, and the costs of this action.

51.     Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

### THIRD CLAIM FOR RELIEF
**(Dilution of Federally Registered Trademarks under 15 U.S.C. § 1125(c))**

52.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

53.     The CAMEL Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the

United States as a designation of the source of Reynolds's goods. The CAMEL Marks became famous long prior to Defendants' unlawful use of the CAMEL Marks, or colorable imitations thereof, as alleged herein.

54.     Defendants' use of the CAMEL Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of their Infringing CAMEL Products is likely to dilute RII's famous CAMEL Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous CAMEL Marks and by harming the reputation and goodwill of the famous CAMEL Marks.

55.     The WINSTON Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods. The WINSTON Marks became famous long prior to Defendants' unlawful use of the WINSTON Marks, or colorable imitations thereof, as alleged herein.

56.     Defendants' use of the WINSTON Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of Infringing WINSTON Products is likely to dilute RII's famous WINSTON Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous WINSTON Marks and by harming the reputation and goodwill of the famous WINSTON Marks.

57.     The KOOL Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A),
in that they are widely recognized by the general consuming public of the United States
as a designation of the source of Reynolds's goods.  The KOOL Marks became famous
long prior to Defendants' unlawful use of the KOOL Marks, or colorable imitations
thereof, as alleged herein.

58.     Defendants' use of the KOOL Marks, or colorable imitations thereof, in
connection with the unauthorized sale in the United States of Infringing KOOL Products
is likely to dilute RII's famous KOOL Marks, in violation of § 43(c) of the Lanham Act,
15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds
exclusively as the source of products in the United States bearing or provided under the
famous KOOL Marks and by harming the reputation and goodwill of the famous KOOL
Marks.

59.     Defendants' unauthorized use of the CAMEL Marks, WINSTON Marks
and KOOL Marks in connection with the sale in the United States of Defendants'
Infringing CAMEL Products, Infringing WINSTON Products and Infringing KOOL
Products, respectively, is intended and has the effect of trading on Reynolds's reputation
and causing dilution of the famous CAMEL Marks, WINSTON Marks and KOOL
Marks.

60.     On information and belief, Defendants cannot assert any rights in the
CAMEL Marks, WINSTON Marks or KOOL Marks that are prior to RII's first use,
actual or constructive, of the CAMEL Marks, WINSTON Marks or KOOL Marks,
respectively.

61.     Defendants' trademark dilution as herein alleged has injured and will continue to injure RII in that RII has suffered and will continue to suffer damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct, unless such unlawful conduct is enjoined by this Court.  In addition, Defendants have been unjustly enriched by reason of their acts of trademark dilution in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

62.     RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unlawful use of the CAMEL Marks, WINSTON Marks and KOOL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with Defendants' offering for sale and sale of electronic cigarette and liquid nicotine products or related products, and the costs of this action.

63.     Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

### FOURTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition)

64.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

65.     Defendants' conduct as alleged above constitutes trademark infringement and unfair competition in violation of the common law of the State of North Carolina.

66.     Defendants' trademark infringement and unfair competition as alleged above has injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct.  In addition, Defendants have been unjustly enriched by reason of their trademark infringement and unfair competition in that Defendants have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

67.     Unless enjoined by this Court, Defendants' trademark infringement and unfair competition as herein alleged will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill.

68.     Defendants' wrongful conduct as above alleged was accompanied by circumstances of willfulness and deliberate indifference to the rights of RII, warranting the assessment of punitive damages.

## FIFTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1 *et seq.*)

69.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

70.     Defendants' conduct as alleged above is in commerce and affects commerce in the State of North Carolina.

71.     Defendants' conduct as alleged above constitutes unfair methods of competition and unfair and deceptive acts and practices in violation of N.C. Gen. Stat. § 75-1 *et seq.*

72. Defendants' unfair methods of competition and their unfair and deceptive trade practices as alleged herein have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct. In addition, Defendants have been unjustly enriched by reason of their unfair methods of competition and unfair and deceptive trade practices in that Defendants have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

73. Defendants have willfully engaged in the acts and practices alleged above, justifying an award of attorneys' fees to RII pursuant to N.C. Gen. Stat. § 75-16.1.

**WHEREFORE**, RII prays the Court as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any and all further unauthorized promotion, marketing, advertising, sale, offering for sale, or distribution of:

a. products bearing the CAMEL Marks, or colorable imitations thereof, including without limitation Defendants' Infringing CAMEL Products;

b. products bearing the WINSTON Marks, or colorable imitations thereof, including without limitation Defendants' Infringing WINSTON Products; and

c. products bearing the KOOL Marks, or colorable imitations thereof, including without limitation Defendants' Infringing KOOL Products.

31

2. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any unauthorized sale, offering for sale, or distribution of products bearing any trademark owned by RII, or any colorable imitations thereof;

3. That RII have and recover of Defendants such actual damages as RII may prove at trial;

4. That Defendants account to RII for all of Defendants' profits derived as a direct and proximate result of Defendants' unlawful conduct;

5. That such damages and/or profits to which RII is entitled be trebled pursuant to 15 U.S.C. § 1117 and N.C. Gen. Stat. § 75-16;

6. That, in the alternative to treble damages and/or profits, RII have and recover punitive damages of Defendants;

7. That the costs of this action, including a reasonable attorneys' fee, be taxed against Defendants; and

8. That the Court grant RII such other and further relief as the Court may deem just and proper.

This the 13th day of November, 2013.

*s/William M. Bryner*

KILPATRICK TOWNSEND & STOCKTON LLP

William M. Bryner, N.C. State Bar No. 23022
Laura C. Miller, N.C. State Bar No. 34103
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: 336-607-7300

Facsimile: 336-607-7500
wbryner@kilpatricktownsend.com
lamiller@kilpatricktownsend.com

*Attorneys for Plaintiff Reynolds Innovations Inc.*